Case: 1:23-mj-00016
Assigned To : Faruqui, Zia M.
Assign. Date : 1/19/2023
Description: Complaint W/ Arrest Warrant

**STATEMENT OF FACTS**

Your affiant, ███████, is a Special Agent with the Federal Bureau of Investigation currently assigned to the Washington Field Office. As a Special Agent, I have been assigned to work on national security matters since September 2019. I have executed search warrants, seized and searched electronic devices, and exploited electronic devices to obtain evidence. Based on my training and experience, I am familiar with the manner in which federal crimes are committed and the efforts of persons involved in such activity to avoid detection by law enforcement. Currently, I am tasked with investigating criminal activity in and around the U.S. Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice

President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Shortly after the events of January 6, 2021, the FBI received a tip to its National Threat Operations Center that Kim Connolly confessed to entering the US Capitol building that day. An FBI agent interviewed the tipster (W-1), as well as a second witness (W-2), who said that Connolly sent several pictures of herself in the assembly outside the Capitol building to W-2. W-2 advised that one of the pictures had a caption that read, "we're in".

On January 10, 2021, on the same day that W-2 was interviewed, Connolly contacted the FBI Special Agent referenced above via telephone number 978-317-4807. Connolly was interviewed telephonically and stated that she did in fact enter the US Capitol building but did not do any damage. Connolly said that she took three pictures inside the building and saw two or three men try to "bum rush" through two police officers. Connolly said she told the officers "not to take this personal." She also picked up a piece of trash while inside the Capitol. Connolly said that she was in the Capitol for a few minutes before officers told people to leave, which she said she did. On January 15, 2021, Connolly was interviewed telephonically by a second FBI agent, and Connolly confirmed that she was in the Capitol building on January 6, 2021, and that she told the previous agent she took several photographs while she was inside.

On January 18, 2021, the United States Attorney's Office for the District of Columbia issued a subpoena for service to AT&T for records pertaining to telephone number 978-317-4807, which confirmed the subscriber as "Kim M Connolly." Open-source database queries for "Kim Connolly" and the telephone number 978-317-4807 identified Kim Marie Connolly, date of birth March 15, 1971, as the subject of the investigation.

On June 2, 2022, a third witness (W-3) was interviewed by an FBI Special Agent and showed the agent a text message thread between W-3 and Connolly on January 6, 2021, as well as photographs that Connolly sent to W-3, which showed the clothing Connolly wore on the day of the riots: a black jacket, a red cap with white lettering, glasses, and a light purple scarf (e.g., Image 1 below). Connolly also sent several photographs to W-3 that appeared to be taken both outside and inside the US Capitol building, including a picture of the rotunda ceiling. W-3 identified the individual in the photograph outside the US Capitol as Connolly. The FBI confirmed Connolly's identity by comparing this photograph to that on her driver's license and to photographs of Connolly obtained from a search warrant served on her Apple iCloud account.



**Image 1**

Using W-3's identifying photographs, your affiant was able to confirm Connolly's entrance into and journey through the Capitol using footage from the building's security cameras provided by United States Capitol Police. At approximately 2:34:53 p.m., Connolly can be seen entering through the upper west terrace doors into the U.S. Capitol Building holding a cellular phone up to her ear (Image 2). Connolly is wearing a long, light purple scarf, a long black coat, a black backpack, a red hat, and glasses, and her hair in a ponytail, matching the photograph provided earlier.



**Image 2**

In the next camera footage, Connolly can be observed entering the frame at approximately 2:34:58 p.m., walking through the hallway, and travelling up the stairs toward the rotunda, still holding a cellular phone to her ear (Image 3). Connolly exits the frame at approximately 2:35:18 p.m.



**Image 3**

At approximately 2:35:50 p.m., Connolly can be seen entering the rotunda from the left of the frame and walking across the space (Images 4 and 5). Connolly appears to be using her cellular phone. Connolly turns sharply to head north, stops at the rotunda entrance door, and turns around and takes photographs of the rotunda ceiling at approximately 2:36:46 p.m. (Image 6). Connolly exits the view of the camera at approximately 2:37:06 p.m., proceeding north.



**Image 4**


**Image 5**


**Image 6**

At approximately 2:35:48 p.m., Connolly is seen entering the frame from the door on the right side of the frame, traveling straight across the rotunda, turning toward the camera, and exiting the Rotunda at approximately 2:36:44 p.m., proceeding north (Images 7, 8, and 9).



**Image 7**



**Image 8**



**Image 9**

At approximately 2:39:12 p.m., Connolly can be seen in the camera footage below, walking down the stairs, continuing straight, and exiting the frame at approximately 2:39:15 p.m. (Image 10).



**Image 10**

At approximately 2:41:31 p.m., at the east end of the crypt lobby, Connolly can be observed entering the frame from the right and stopping to talk to an unknown male. Connolly picked up and threw away a piece of trash and exited the frame proceeding into the crypt at approximately 2:42:00 p.m. (Images 11, 12, 13, and 14).



**Image 11**



**Image 12**



**Image 13**



**Image 14**

At approximately 2:42:00 p.m., Connolly can be seen walking across the crypt and exiting the frame at approximately 2:42:18 p.m. (Image 15).

11



**Image 15**

At approximately 2:42:22 p.m., Connolly can be seen entering the hall from the left side of the frame. Connolly appears to be ushered by police offers toward the direction of the right side of the camera frame, and she is last seen in the frame at approximately 2:42:44 p.m. (Image 16).



**Image 16**

At approximately 2:42:57 p.m., Connolly can be seen walking down the hall of columns and is last seen in the frame at approximately 2:44:07 p.m. (Image 17). Connolly exists the building at approximately 2:44:07 having spent approximately nine minutes inside the Capitol building.



**Image 17**

Finally, in addition to the review of video footage, a search warrant was served on AT&T on January 6, 2021. According to records provided by AT&T, in and around the time of the incident, the cellular phone associated with 978-317-4807 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the United States Capitol building on January 6, 2021. This same telephone number was used to contact Connolly by two FBI Special Agents.

Based on the foregoing, your affiant submits that there is probable cause to believe that Connolly violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that Connolly violated 40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.



Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 19th day of January 2023.

_____
ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE